UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRTAMOVE, CORP.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GOOGLE LLC,<br><br>　　　　Defendant. | Case No. 25-cv-00860-NW<br><br>**ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS**<br><br>Re: ECF No. 110 |

Plaintiff VirtaMove Corp. sued Defendant Google LLC for patent infringement. On July 15, 2025, Google filed a motion to dismiss Virtamove's complaint. ECF No. 110.[1] Having considered the parties' briefs and the relevant legal authority, the Court concludes oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the December 3, 2025 hearing, and DENIES the motion in part and GRANTS the motion in part with leave to amend.

**I.   BACKGROUND**

　　**A.   Factual Background and Procedural History[2]**

Plaintiff VirtaMove is a Canadian company, formerly known as Appzero Software Corp., and established in 2010. VirtaMove focuses on containerization, or portable computing environments.

In 2015, 2020, and 2021, VirtaMove met with Defendant Google to negotiate a partnership. VirtaMove demonstrated its V-Migrate/AppZero software and shared materials with

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] The factual background is drawn from VirtaMove's second amended complaint. *See* ECF No. 68.

1    Google about how the software worked.  Negotiations eventually broke down.

2    　　　　On January 31, 2024, VirtaMove sued Google in the United States District Court for the

3    Western District of Texas for infringement of two patents: U.S. Patent Nos. 7,519,814 (the "'814

4    patent") and 7,784,058 (the "'058 patent").  On July 10, 2024, Google moved to transfer the case

5    to the Northern District of California, and the Court granted Google's motion on January 22, 2025.

6    ECF No. 49, 86.[3]

7    　　　　In June of 2024, while the case was still in the Western District of Texas, Google filed a

8    motion to dismiss VirtaMove's first amended complaint.  ECF No. 36.  VirtaMove filed a second

9    amended complaint on December 5, 2025.  ECF No. 68.  The parties stipulated that Google's first

10   motion to dismiss would apply to the second amended complaint and could be decided as briefed.

11   ECF No. 73.  Alternatively, the parties stated, "[i]f the Court prefers to proceed differently, the

12   parties will defer to the Court's preference."  *Id.*  From the docket, it does not appear the Texas

13   Court entered the parties' stipulation.

14   　　　　On July 1, 2025, the undersigned judge mooted Google's motion to dismiss VirtaMove's

15   first amended complaint considering that VirtaMove had since filed a second amended complaint.

16   ECF No. 108.  On July 15, 2025, rather than filing an updated motion to dismiss VirtaMove's

17   second amended complaint, Google refiled its motion to dismiss the first amended complaint

18   asserting that the parties' stipulation remained operative.  ECF No. 110.  VirtaMove filed an

19   opposition on July 29, 2025, *see* ECF No. 111, and Google filed a reply seven days later, *see* ECF

20   No. 113.

21   　　　　While Google's motion to dismiss was pending, VirtaMove filed a notice of voluntary

22   dismissal without prejudice of the '058 patent, mooting the portions of Google's motion relating to

23   that patent.  ECF No. 123.  In light of VirtaMove's voluntary dismissal the Court DISCHARGES

24   its November 25, 2025 order requiring the parties to meet and confer and file supplemental

25   briefing as to the status of the '058 patent.  ECF No. 122.

---

[3] Due to issues with the transfer, the case did not begin in the Northern District of California until May 2025.  *VirtaMove, Corp. v. Google LLC*, No. 24-CV-00033-DC, 2025 WL 2634158 (W.D. Tex. May 7, 2025).

2

**B.     U.S. Patent No. 7,519,814**

The '814 Patent "relates to management and deployment of server applications." '814 patent at 1:15–16.  In traditional computer systems, the operating system controls access to shared resources required by various software applications, *see id.* at 1:20–24, but that creates drawbacks that can prevent different applications from being installed on the same system.  Most notably, "certain applications require a specific version of operating system facilities and as such will not co-exist with applications that require another version." *Id.* at 1:37–40.  At the time of the application, there were ways to address this.  For example, so-called virtual machine technology allowed multiple operating systems "to effectively co-exist on a single compute platform." *Id.* at 1:54–56.  That approach, however, "imposes significant performance overhead" and "does nothing to alleviate the requirement that an operating system must be licensed, managed and maintained for each application." *Id.* at 1:62–65.  The patent purports to address this problem by teaching a system that "only requires one operating system regardless of the number of application containers deployed." *Id.* at 1:60–61.  Further, applications can "more effectively share a common comput[ing] platform, and also applications to be easily moved between platforms, without the requirement for a separate and distinct operating system for each application." *Id.* at 1:65–2:3.



Figure 2

Figure 2 (above) shows an embodiment with multiple applications (21a–21f). Each application is within one of three secure "containers" (20a–20c), which the server creates by aggregating "all files required to successfully execute a set of software applications on a computing platform." '814 patent at 7:25–27. Because each application is segregated and executes its own copy of files, each application can use different versions of system files if necessary. *Id.* at 7:8–10.

Claim 1 recites:

> 1. In a system having a plurality of servers with operating systems that differ, operating in disparate computing environments, wherein each server includes a processor and an operating system including a kernel a set of associated local system files compatible with the processor, a method of providing at least some of the servers in the system with secure, executable, applications related to a service, wherein the applications are executed in a secure environment, wherein the applications each include an object executable by at least some of the different operating systems for performing a task related to the service, the method comprising:
>
> storing in memory accessible to at least some of the servers a plurality of secure containers of application software, each container comprising one or more of the executable applications and a set of associated system files required to execute the one or more applications, for use with a local kernel residing permanently on one of the servers;
>
> wherein the set of associated system files are compatible with a local kernel of at least some of the plurality of different operating systems, the containers of application software excluding a kernel,
>
> wherein some or all of the associated system files within a container stored in memory are utilized in place of the associated local system files that remain resident on the server,
>
> wherein said associated system files utilized in place of the associated local system files are copies or modified copies of the associated local system files that remain resident on the server, and
>
> wherein the application software cannot be shared between the plurality of secure containers of application software, and
>
> wherein each of the containers has a unique root file system that is different from an operating system's root file system.

*Id.* at cl. 1. Because the complaint only asserts infringement of claim 1, Google treats claim 1 as representative.

## II. LEGAL STANDARD

### A. Motion to Dismiss

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the [plaintiff]." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

### B. Section 101 Patent Eligibility

Patent eligibility "is a question of law, based on underlying facts" that "may be, and frequently has been, resolved on a Rule 12(b)(6) . . . motion." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). Dismissal is appropriate "where the undisputed facts, considered under the standards required by [Rule 12(b)(6)], require a holding of ineligibility under the substantive standards of law." *Id.*

Section 101 "defines the subject matter that may be patented." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). Under Section 101, patentable subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. "These categories are broad, but they are not limitless." *Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1136 (N.D. Cal. 2017). "Laws of nature, natural phenomena, and abstract ideas are not patentable," *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014), because "they are the basic tools of scientific and technological work," which are "free to all . . . and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus*

*Lab'ys, Inc.*, 566 U.S. 66, 70 (2012) (cleaned up).  Allowing patent claims for such purported inventions "might tend to impede innovation more than it would tend to promote it." *Id.*

But courts must "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice Corp. Pty.*, 573 U.S. at 217.  "At some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* (cleaned up). So, "in applying the § 101 exception, [the Court] must distinguish between patents that claim the 'building blocks' of human ingenuity and those that integrate the building blocks into something more, thereby 'transforming' them into a patent-eligible invention." *Id.* (cleaned up).

To draw this distinction, the Court engages in a two-step "*Alice*" analysis.  First, the Court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 218. If so, the Court then assesses "whether the elements of each claim, both individually and as an ordered combination[,] . . . transform the nature of the claim into a patent eligible application." *Id.* at 217 (cleaned up).  This second step of the analysis is "a search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id*. at 217-18 (cleaned up). Where the claims at issue are not directed to an abstract idea, a court need not reach the second step of the *Alice* analysis.  *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018) ("Because we hold that the asserted claims are not directed to an abstract idea, we do not proceed to the second step of the inquiry.").

### III. DISCUSSION

Google moves to dismiss VirtaMove's complaint for failing to state a claim on several grounds: (1) that the '814 patent is ineligible under Section 101, (2) the allegations of direct infringement do not plausibly state a claim, (3) the complaint lacks sufficient allegations to state a claim for indirect infringement, and (4) VirtaMove fails to adequately plead knowledge for pre-suit indirect infringement and compliance with the marking statute.

#### A. Patent Eligible Subject Matter Under Section 101

To begin, step one of the two-step *Alice* patent eligibility inquiry asks whether the claim is directed to a patent-ineligible abstract idea.  At this step, courts consider "what the patent asserts

to be the focus of the claimed advance over the prior art." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020). Thus, the Court begins step one of the *Alice* analysis with the "directed to" inquiry, by asking what the '814 patent asserts to be the focus of the claimed advance. *See Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021) ("We have approached the Step 1 directed to inquiry by asking what the patent asserts to be the focus of the claimed advance over the prior art. In conducting that inquiry, we must focus on the language of the asserted claims themselves, considered in light of the specification." (cleaned up).)

At *Alice* step one, the court evaluates "the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to [an abstract idea]." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019) (citation modified). Finding a claim's "focus" requires a delicate balancing act. While the process necessarily requires some high-level description, the Court must articulate "what the claims are directed to" with "enough specificity to ensure the step one inquiry is meaningful." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.").

The '814 patent "relates to computer software," particularly the "management and deployment of server applications." '814 pat. at 1:14-16. The claimed invention purports to provide "a solution whereby a plurality of services can conveniently be installed on one or more servers in a cost effective and secure manner." *Id.* at 2:13–15; *see also* ECF No. 68 ¶ 15. For instance, the specification describes:

> The key difference between the Virtual Machine approach and the approach described herein is that in the former an operating system, including files and a kernel, must be deployed for each application while the latter only requires one operating system regardless of the number of application containers deployed. The Virtual Machine approach imposes significant performance overhead. Moreover, it does nothing to alleviate the requirement that an operating system must be licensed, managed and maintained for each application. The invention described herein offers the ability for applications to more effectively share a common compute platform, and also allow applications to be easily moved between platforms, without the

7

> requirement for a separate and distinct operating system for each application.

'814 pat. at 1:56-2:3.

Google argues that "[t]he '814 Patent is directed to the abstract idea of using containers with copies of system files for applications, so that those applications can be used in different operating environments." ECF No. 110-1 at 23.[4] In support, Google asserts that claim 1 "recites a computer system with generic computer elements such as containers, servers, operating systems, computing environments, a processor, a kernel, local system files, applications, objects, and a root file system." *Id.* at 23-24.

VirtaMove argues that Google's analysis fails to consider the claims as a whole and account for the '814 patent's claimed advance. ECF No. 111 at 11. VirtaMove asserts that the claimed advance is:

> storing … secure containers of application software, each container comprising one or more of the executable applications and a set of associated system files required to execute the one or more applications … wherein said associated system files utilized in place of the associated local system files are copies or modified copies of the associated local system files that remain resident on the server, and wherein the application software cannot be shared between the plurality of secure containers of application software, and wherein each of the containers has a unique root file system that is different from an operating system's root file system.

*Id.* at 12 (citing '814 pat. at 17:41-61).

The Court agrees with VirtaMove that the focus must be on the claim language. *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1363 (Fed. Cir. 2023). The Court finds claim 1 is directed to a method within a system having a plurality of servers with different operating systems, where the method provides the servers in the system with secure, executable, applications related to a service. Additionally, the method of claim 1 requires storing in memory accessible to at least some of the servers a plurality of secure containers of application software, with each container comprising one or more of the executable applications and a set of associated system

---

[4] The Court notes that the ECF-generated page numbers, typically visible at the top of filed documents, are not visible on ECF No. 110-1. Therefore, citations for ECF No. 110-1 are to the pdf page numbers of the electronic document. Going forward, counsel should ensure that filed documents include visible ECF-generated page numbers for the Court's reference.

files required to execute the one or more applications, for use with a local kernel residing permanently on one of the servers.

Next, the Court determines whether this focus is an abstract idea. "Neither the U.S. Supreme Court nor the Federal Circuit has set forth a bright line test separating abstract ideas from concepts that are sufficiently concrete so as to require no further inquiry under the first step of the *Alice* framework." *Twilio, Inc.*, 249 F. Supp. 3d at 1138 (citing *Alice Corp. Pty.*, 573 U.S. at 221). That a claim is directed to "mental processes that can be performed in the human mind or using a pencil and paper" is a sign of abstraction. *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021) (cleaned up). Likewise, "[a] claimed method's similarity to fundamental . . . practices long prevalent is yet another clue that the claims may be abstract and unpatentable." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024) (cleaned up). To determine whether a claim's focus is an abstract idea, courts also "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC*, 822 F.3d at 1334.

Claim 1 of the '814 patent is not directed to an abstract idea. Rather, the claimed solution of the '814 patent "is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).

Here, claim 1 is not simply directed to any method of using containers with copies of system files for applications, so that those applications can be used in different operating environments, but instead to a specific method that requires storing in memory (accessible to at least some of the servers) a plurality of secure containers of application software, with each container comprising one or more of the executable applications and a set of associated system files required to execute the one or more applications, for use with a local kernel residing permanently on one of the servers. *Id.* For example, claim 1 recites a method that stores in memory "secure containers of application software" that each contain at least one executable application and "set of associated system files required to execute the one or more applications" all "for use with a local kernel residing permanently on one of the servers." '814 pat., cl. 1. The

9

set of associated system files need to be "compatible with a local kernel of at least some of the plurality of different operating systems" so that they can be "utilized in place of the associated local system files that remain resident on the server." *Id.* Additionally, the set of associated system files "are copies or modified copies of the associated local system files that remain resident on the server." *Id.* Finally, the method of claim 1 requires that "the application software cannot be shared between the plurality of secure containers of application software," and "each of the containers has a unique root file system that is different from an operating system's root file system." *Id.*

In particular, the '814 patent claims to address the limitations of prior "solutions that address the single use nature of computer systems." '814 pat. at 1:51-52. As VirtaMove alleges, the "invention provides a solution whereby a plurality of services can conveniently be installed on one or more servers in a cost effective and secure manner.'" ECF No. 68 ¶ 15 (citing *id.* at 2:13–15). "[T]he technology of the '814 patent requires only requires [sic] one operating system regardless of the number of application containers deployed, and it 'offers the ability for applications to more effectively share a common compute platform, and also allow applications to be easily moved between platforms, without the requirement for a separate and distinct operating system for each application.'" ECF No. 68 ¶ 15 (citing '814 pat. at 1:51–2:3).

Google argues that not only are these claim elements conventional, *see* ECF No. 110-1 at 24, but they are functional without providing the implementation details, *id.* at 25. The Court disagrees.

Claim 1 of the '814 patent does not encompass the type of functional claiming at issue in *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266 (Fed. Cir. 2016). There, "the claims do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem." *Id.* at 1269. Here, as described above, claim 1 provides limiting detail, including having associated system files that "are copies or modified copies of the associated local system files that remain resident on the server" and containers with "a unique root file system that is different from an operating system's root file system," that confines the claim to a particular solution to an identified problem. '814

10

pat., cl. 1. Claim 1 focuses on a specific method, not the result or effect. Thus, claim 1 of the '814 patent is not directed to an abstract idea.

Accordingly, because claim 1 of the '814 patent is not directed to an abstract idea, the Court need not reach *Alice* step two. *See Core Wireless Licensing S.A.R.L.*, 880 F.3d at 1363 ("Because we hold that the asserted claims are not directed to an abstract idea, we do not proceed to the second step of the inquiry.").

### B.     Direct Infringement

Google next contends that VirtaMove's second amended complaint should be dismissed because VirtaMove's did not state a claim of direct infringement. Liability for direct infringement arises when a party "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). To plead direct infringement, a plaintiff must recite "some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). "A plaintiff is not required to plead infringement on an element-by-element basis." *Id.* at 1352 (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)). However, a plausible claim requires at least some factual allegations to support a plausible inference that the product at issue satisfies a claim limitation. *See id.* at 1355.

To satisfy the *Iqbal* pleading standard in a patent case, "[s]pecific facts are not necessary." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quotation omitted). The complaint needs to only give a defendant "fair notice of what the [infringement] claim is and the ground upon which it rests." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). In addition, "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 42 (Fed. Cir. 2024) (citation omitted).

Here, VirtaMove's second amended complaint satisfies the pleading standard and gives Google "fair notice" of the direct infringement claims. Like in *AlexSam, Inc.*, VirtaMove includes

11

1  claim charts as attachments to its complaint, expressly mapping each claim limitation to the
2  accused instrumentalities. *See e.g.* ECF No. 68-5 at 2-63 (claim chart for the '814 pat.); *see also*
3  *AlexSam, Inc.*, 119 F.4th at 42.
4      Google seems to assert that while the VirtaMove's complaint only accuses Google's
5  Migrate to Containers product, VirtaMove's claim charts attached to the complaint "barely discuss
6  Migrate to Containers." ECF No. 113 at 12. Yet VirtaMove's claim charts, which directly cite to
7  publicly available information, are sufficient to put Google on notice. Because that is all that is
8  required at this stage, Google's request to dismiss VirtaMove's claim for direct infringement of
9  the '814 patent is DENIED.

### C. Indirect Infringement

Google makes three arguments in support of its request for dismissal of VirtaMove's indirect infringement claims: that VirtaMove fails to plead (1) the elements of induced infringement, (2) the elements of contributory infringement, and (3) pre-suit knowledge. ECF No. 110-1 at 11-15. The Court addresses each in turn.

#### 1. Induced Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To plead a claim for induced infringement, the plaintiff must show that the alleged inducer (1) knew of the patent, (2) knowingly induced the infringing acts, and (3) possessed a specific intent to encourage another's infringement of the patent. *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006)). Further, induced infringement is predicated on the existence of direct infringement. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement.").

Google argues that VirtaMove's allegations fail to demonstrate that Google knew of the infringing acts and knew that "promotion of its products would induce or encourage others to infringe the asserted patents." ECF No. 110-1 at 12. VirtaMove counters that both arguments stem from disputes of fact, which are improper to resolve at the pleadings stage. ECF No. 111 at

12

23. The Court agrees with VirtaMove.

Here, the second amended complaint alleges sufficient facts to show that Google knew of the allegedly infringing acts and possessed specific intent. For instance, the complaint describes how VirtaMove met with Google in 2015, 2020, and 2021 to try to form a partnership. ECF No. 68 ¶ 10. While meeting, VirtaMove demonstrated its allegedly patented software, trained Google on how to use it, discussed potential implementation, and shared materials. *Id.* Coupled with the allegations that Google "knowingly and intentionally induces infringement of claims of the '814 patent," "had knowledge of the '814 patent and the infringing nature of the Accused Products" since at least as of the filing of the complaint, and "[d]espite this knowledge of the '814 patent, [Google] continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '814 patent," VirtaMove adequately alleges a claim for induced infringement. *Id.* ¶ 18.

### 2. Contributory Infringement

Contributory infringement is a type of indirect infringement that involves the sale of a component specifically designed for use in a patented combination or process. 35 U.S.C. § 271(c) ("Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."). To plead a claim for contributory infringement, a patent owner must allege: "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

Google asserts that VirtaMove's allegations "amount to little more than a conclusory statement that repeats the legal elements of contributory infringement." ECF No. 110-1 at 13. In

particular, Google maintains that the complaint fails to identify what part of the accused instrumentalities is a component used for infringement, or facts supporting the inference that the accused component has no substantial non-infringing uses or is a material part of the invention. *Id.* VirtaMove disagrees and cites to portions of the second amended complaint identifying Google's specially configured servers that run the accused software as the component used for infringement and stating that these servers are not suitable for non-infringing uses. ECF No. 111 at 24 (citing ECF No. 68 ¶ 28). Google counters that VirtaMove's identified infringing component is not provided to customers for their use, but instead VirtaMove identifies servers that Google servers that Google uses. ECF No. 113 at 14-15; *see also* ECF No. 68 ¶ 28 ("Google directly infringes by its making, using (e.g., running on Google's servers), offering for sale (e.g., offering Migrate to Containers), selling (e.g., selling Migrate to Containers), and/or importing."). The Court agrees with Google on this point.

The second amended complaint lacks sufficient allegations to specifically identify the "component is a material part of the invention" that "has no substantial noninfringing uses." *Fujitsu Ltd.*, 620 F.3d at 1326. Even considering the complaint's attached claim charts, as VirtaMove urges the Court to do, *see* ECF No. 111 at 24, VirtaMove's second amended complaint fails to state a claim for contributory infringement. Google's motion to dismiss VirtaMove's claim for contributory infringement of the '814 patent is therefore GRANTED with leave to amend.

### 3. Pre-suit knowledge

As noted above, indirect infringement claims require allegations of "knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). Google argues that VirtaMove fails to adequately plead pre-suit knowledge of the '814 patent. ECF No. 110-1 at 14-15. VirtaMove counters that the second amended complaint sufficiently pleads pre-suit knowledge, based on its negotiations with Google prior to the filing of the lawsuit. ECF No. 111 at 22 (citing ECF No. 68 ¶ 10). While these allegations, together with those referenced above regarding Google's post-suit knowledge of the '814 patent are sufficient to support a claim for induced and contributory infringement — at least as of the

1 time of the filing of the complaint — they are insufficient to allege Google's pre-suit knowledge
2 of the '814 patent.  Therefore, Google's motion to dismiss VirtaMove's induced infringement
3 claims based on Google's actual, pre-suit knowledge of the '814 patent is GRANTED with leave
4 to amend.

### D. Pre-suit Damages

Google seeks dismissal of VirtaMove's pre-suit damages claim for failure to plead compliance with the patent marking statute.  ECF No. 110-1 at 27.  VirtaMove makes two points in response.  ECF No. 111 at 25.  First, VirtaMove argues that the second amended complaint properly pleads compliance with the patent marking statute by linking to a pre-suit marking website.  *Id.* (citing ECF No. 68 ¶¶ 22, 34).  Second, VirtaMove argues that the marking requirement does not apply to claim 1 of the '814 patent, the only asserted claim, because it is a method claim.  ECF No. 111 at 25.

The Patent Act provides that "[p]atentees, and persons making, offering for sale, or selling within the United States any patented article for or under them . . . may give notice to the public that the same is patented, either by fixing thereon the word 'patent' or the abbreviation 'pat.' together with the number of the patent." 35 U.S.C. § 287(a).  "Such 'marking' of patented products is required before the patent owner may recover damages, unless notice was provided another way, such as through the filing of the complaint." *Sapphire Crossing LLC v. Abbyy USA Software House, Inc.*, 497 F. Supp. 3d 762, 768 (N.D. Cal. 2020).

Here, the allegations of VirtaMove's second amended complaint sufficiently plead compliance with the marking requirement.  As noted above, VirtaMove not only alleges that it "complied with the requirements of 35 U.S.C. § 287 and is not aware of any unmarked products that practice the claims of the '814 patent," *see* ECF No. 68 ¶ 22, but asserts only '814 patent claim 1, a method claim, in the complaint.  At the pleadings stage, this is sufficient.  *See also VirtaMove, Corp. v. Hewlett Packard Enter. Co.*, No. 2:24-CV-00064-JRG, 2024 WL 4519761 (E.D. Tex. Oct. 17, 2024) (finding VirtaMove met its burden of pleading compliance with the marking statute given similar allegations of infringement of the '814 patent against a different defendant).

## IV. CONCLUSION

For the reasons stated above, Google's motion to dismiss is DENIED in part and GRANTED in part as follows:

- Google's motion to dismiss VirtaMove's claim for contributory infringement of the '814 patent is GRANTED with leave to amend;
- Google's motion to dismiss VirtaMove's induced infringement claims based on Google's actual, pre-suit knowledge of the '814 patent is GRANTED with leave to amend; and
- Google's motion to dismiss is DENIED in all other respects.

Should VirtaMove elect to file a third amended complaint, VirtaMove shall do so within 21 days of this order, or by December 19, 2025.  Google's response to the complaint shall be due by January 9, 2025.

**IT IS SO ORDERED.**

Dated: November 28, 2025

Noël Wise
United States District Judge