UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRTAMOVE, CORP.,<br><br>        Plaintiff,<br><br>    v.<br><br>GOOGLE LLC,<br><br>        Defendant. | Case No. 25-cv-00860-NW<br>Case No. 26-cv-00704-NW (consol.)<br>**ORDER GRANTING IN PART AND DENYING IN PART GOOGLE'S MOTION TO DISMISS**<br><br>Re: ECF No. 42 |

Plaintiff VirtaMove, Corp. alleges that Defendant Google LLC infringes U.S. Patent No. 7,774,762 (the "'762 patent"). *See* ECF No. 1 ("Compl."); ECF No. 1-1 ('762 patent). [1] Google has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 42 ("Mot.").

Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition without oral argument and VACATES the June 3, 2026 hearing. Having considered the parties' arguments and the relevant legal authority, the Court GRANTS IN PART AND DENIES IN PART Google's motion.

## I.    BACKGROUND

### A.    Allegations of the Complaint[2]

VirtaMove, formerly known as AppZero Software Corp., focuses on containerization, that is, a portable computing environment. AppZero's software and services allow its customers to

---

[1] Record citations are to material in the Electronic Case File ("ECF") and, unless otherwise indicated, to material filed in *VirtaMove, Corp. v. Google LLC*, 26-cv-00704-NW ("*VirtaMove II*"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] The factual background is drawn from VirtaMove's complaint.

deploy the technology disclosed in the '762 patent.

The '762 patent issued on August 10, 2010, and is entitled "System Including Run-Time Software to Enable a Software Application to Execute on an Incompatible Computer Platform." The '762 patent is a continuation-in-part, and incorporates by reference, U.S. Patent No. 7,519,814 (the "'814 patent"), entitled "System for Containerization of Application Sets." The claimed invention of the '762 patent "relates to management and deployment of one or more software applications on one or more computer platforms for which one or more applications was not designed to execute on." *Id.* at 1:29–32; *id.* at 1:52–55 ("It is an object of this invention to provide a system whereby one or more software applications can be run or executed on an incompatible computer platform which heretofore, the applications could not be run on.").

In 2015, 2020, and 2021, VirtaMove met with Google to explore a partnership, demonstrate and train Google on how to use the AppZero software, discuss the integration of AppZero into Google Cloud, and share materials about how AppZero functions. VirtaMove alleges certain Google products—including "Google Kubernetes Engine, Cloud Run, Migrate to Containers, Google Container Registry, Google Artifact Registry, Google Cloud Platform, and all versions and variations thereof since the issuance of the ['762 patent]" (collectively, the "Accused Products")—practice the claimed invention of the '762 patent. Compl. ¶ 16.

**B.    *VirtaMove I***

The '814 patent is the subject of another, related lawsuit brought by VirtaMove against Google, *VirtaMove, Corp. v. Google LLC*, 25-cv-00860-NW ("*VirtaMove I*").

This Court's November 28, 2025 order contains a detailed factual and procedural history of *VirtaMove I*, as well as a description of the '814 patent. *VirtaMove I*, ECF No. 124 at 1–4. In that matter, Google moved to dismiss the second amended complaint ("SAC"), arguing, among other things, that the '814 patent was ineligible under ineligible under 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). *VirtaMove I*, ECF No. 110.[3]

On November 28, 2025, this Court granted in part and denied in part Google's motion.

---

[3] Google's motion also sought dismissal of U.S. Patent No. 7,784,058. VirtaMove voluntarily dismissed that patent without prejudice. *VirtaMove I*, ECF No. 123.

2

United States District Court
Northern District of California

Specifically, the Court (1) found that the '814 patent was not directed to an abstract idea; (2) found that the SAC stated claims of direct infringement and induced infringement under the *Iqbal/Twombly* standard; and (3) dismissed with leave to amend VirtaMove's claims for contributory infringement and induced infringement based on Google's actual, pre-suit knowledge of the '814 patent. *VirtaMove I*, ECF No. 124.

Google answered the SAC on January 9, 2026. *VirtaMove I*, ECF No. 129.

### C.    Procedural History

In this matter, on August 8, 2025, VirtaMove sued Google in the Western District of Texas, alleging infringement of the '762 patent. On October 20, 2025, while the case was still pending in Texas, Google moved to dismiss the complaint on grounds that (1) the '762 patent is ineligible under Section 101 and *Alice*, and (2) the complaint did not plausibly allege direct infringement and indirect infringement, including pre-suit indirect infringement. ECF No. 14. On January 20, 2026, and before it ruled on Google's motion to dismiss, the Texas court granted the parties' stipulation to transfer the action to this Court. ECF No. 21. The undersigned judge related, and then subsequently consolidated, the instant action to *VirtaMove I*. ECF Nos. 35, 47.

On March 18, 2026, Google filed a statement of recent decision regarding this Court's November 28, 2025 order in *VirtaMove I*. ECF No. 40. Google then withdrew the portions of its motion to dismiss the '762 patent as ineligible under Section 101 and allegations of post-suit induced infringement. *Id.* at 2. The Court ordered Google to re-file its motion with only the portions Google planned to pursue. ECF No. 41. The Court also allowed VirtaMove to file a supplemental opposition, and Google to file a supplemental reply, regarding the updated motion. ECF No. 41.

Google filed the instant motion on March 27, 2026. ECF No. 42. VirtaMove re-filed its opposition "with minor non-substantive revisions in response to Google's redlined Motion to Dismiss . . . to account for interim developments and to reflect the transfer of this action to the Northern District of California . . . ." ECF No. 43 ("Opp'n") at 4 n.1. VirtaMove also filed a supplemental opposition, and Google filed a supplemental reply. ECF No. 44 ("Suppl. Opp'n"); ECF No. 45 ("Suppl. Reply").

On April 17, 2026, the Court granted the parties' stipulation to consolidate the instant matter with *VirtaMove I*.  ECF No. 47.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[ ] the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory, or (2) insufficient facts to support a cognizable legal claim.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).

When analyzing a complaint under Rule 12(b)(6), the court accepts the well-pleaded factual allegations as true and draws all reasonable inferences in favor of the nonmoving party.  *Id.* Legal conclusions couched as factual allegations are not entitled to the assumption of truth.  *Id.*

## III.    DISCUSSION

To satisfy the *Iqbal* pleading standard in a patent case, "[s]pecific facts are not necessary[.]"  *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quotation marks and citation omitted).  The complaint needs to only give a defendant "fair notice of what the [infringement] claim is and the ground upon which it rests."  *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  In addition, "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device."  *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 42 (Fed. Cir. 2024) (citation omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

### A.    Direct Infringement

Liability for direct infringement arises when a party "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). To plead direct infringement, a plaintiff must recite "some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). "A plaintiff is not required to plead infringement on an element-by-element basis." *Id.* at 1352 (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)). But the plaintiff's claim must include at least some factual allegations to support a plausible inference that the product at issue satisfies a claim limitation. *See id.* at 1355.

Google argues the complaint fails to plead direct infringement because there are no plausible allegations showing that the filtering step of claim 17(c) is met. For instance, although VirtaMove's claim chart identifies "containerd" functionalities, there are no allegations that "containerd" means filtered or filtering application libraries. *See* ECF No. 1-2 at 30–37 (claim chart for the '762 patent, cl. 17[c]). Claim 17[c] discloses a method of enabling a software application to execute that operates on a first computer platform, to execute on a second, incompatible computer platform:

> In a system having a first software application, which is designed for execution on a first computer platform, a method of executing said first software application on an incompatible computer platform in which the first software application is not intended to execute, said first software application including an object executable by a local operating system of the incompatible computer platform for performing a task related to a service, the incompatible computer platform including a processor, an operating system including a local kernel residing on the incompatible computer platform, and a set of associated local system files compatible with the local kernel and the processor of the incompatible computer platform, the method comprising:
>
> a) providing a computer readable set of first files, comprising a first group of files that include the first software application, designed to execute on the first computer platform and a second group of files that are distributed with or are specific to an operating system required to execute the first software application;
>
> b) in the execution of the first software application on the incompatible computer platform using said second group of files in

place of the associated local system files normally used to perform a same task, which are resident on the incompatible computer platform as part of the operating system, and,

c) executing on the second incompatible computer platform runtime software for managing a dynamic state and file location of the first software application, the runtime software including a kernel module resident in kernel mode and at least one application filter library resident in user mode and filtering one or more system service requests made by the first software application and providing values from the at least one application filter library which is provided in addition to the local operating system libraries to modify values that otherwise would have been returned by the local operating system in the absence of said filtering one or more system service requests from the first software application, and executing the first software application by accessing files from first set of files in place of operating system files and wherein predetermined values are provided instead of values related to an identity of the incompatible computer platform.

'762 patent at 17:25–18:28.

The complaint contains sufficient allegations of direct infringement to withstand a Rule 12(b)(6) motion. The question of whether "containerd" satisfies claim 17[c]'s filtering requirement is more appropriate for resolution with the benefit of claim construction and/or expert testimony. But at this juncture, Google has sufficient notice of VirtaMove's theory of infringement. Google's motion to dismiss VirtaMove's claim for direct infringement is therefore DENIED.

### B.    Indirect Infringement

Google moves to dismiss VirtaMove's indirect infringement claims on grounds that the complaint fails to plead the elements of contributory infringement, pre-suit knowledge, and pre-suit induced infringement.

#### 1.    Contributory Infringement

Contributory infringement is a type of indirect infringement that involves the sale of a component specifically designed for use in a patented combination or process. 35 U.S.C. § 271(c) ("Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such

patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.").  To plead a claim for contributory infringement, a patent owner must allege: "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

VirtaMove's complaint fails to state a contributory infringement claim, as there are no allegations showing that the "component is a material part of the invention" that "has no substantial noninfringing uses." *Fujitsu Ltd.*, 620 F.3d at 1326.  VirtaMove argues that Google's "servers, once specially configured as recited in the asserted patents, are no longer staple articles, nor are they suitable for noninfringing uses."  Opp'n at 8.  But VirtaMove, tellingly in its omission, does not explain how this is so.  Accordingly, VirtaMove's contributory infringement claim is DISMISSED WITH LEAVE TO AMEND.

### 2. Pre-Suit Knowledge

Indirect infringement claims require allegations of "knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015).

Google argues that the allegations of pre-suit indirect infringement fail because VirtaMove does not adequately plead Google had pre-suit knowledge of the '762 patent.  Mot. at 12–13.  VirtaMove counters that the allegations regarding its pre-lawsuit negotiations with Google are sufficient to plead pre-suit knowledge, and that Google's argument as to whether it learned about the '762 patent through due diligence is a factual dispute.  Opp'n at 8–9 (citing Compl. ¶ 10).

The allegation that "Google would have learned that AppZero was patented as a matter of basic due diligence" (Compl. ¶ 10), without more, is conclusory and insufficient to give rise to an inference of pre-suit knowledge.  *See Elec. Scripting Prods., Inc. v. HTC Am. Inc.*, No. 17-CV-05806-RS, 2018 WL 1367324, at *6 (N.D. Cal. Mar. 16, 2018) ("[A]llegations regarding 'defendant's exercise of due diligence pertaining to intellectual property affecting its Devices'" were not "sufficient to establish knowledge"); *Tawnsaura Grp., LLC v. Maximum Hum.*

*Performance, LLC*, No. CV 12–07189–SJO–(AGRx), 2012 WL 12331032, at *1 (C.D. Cal. Nov. 7, 2012) (finding allegations that "[d]efendant must have had knowledge of the patents because it employs 'sophisticated, experienced legal counsel with expertise in patent law' and 'conducts or should conduct due diligence' or in the alternative, was willfully blind as to infringement" to be "boilerplate" and "insufficient").  Thus, to the extent the indirect infringement claim is predicated on pre-suit knowledge, VirtaMove's claim is DISMISSED WITH LEAVE TO AMEND.

### 3.    Pre-Suit Induced Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  To plead a claim for induced infringement, the plaintiff must show that the alleged inducer (1) knew of the patent, (2) knowingly induced the infringing acts, and (3) possessed a specific intent to encourage another's infringement of the patent.  *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006)).  Further, induced infringement is predicated on the existence of direct infringement.  *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement.").

Google argues that, to the extent the induced infringement claim is predicated on pre-suit conduct, the claim fails for the same reason as the direct infringement claim, namely, there are no allegations that the Accused Products "filter" as disclosed in the '762 patent.  Mot. at 13.  Google contends VirtaMove's claim fails for the additional reason that there are no allegations of specific intent.  *Id.* at 14.

Google's filtering argument fails with respect to the induced infringement claim for the same reasons as it does with the direct infringement claim.  But, as discussed above, the complaint does not adequately allege pre-suit knowledge.  For this reason, VirtaMove's induced infringement claim is DISMISSED WITH LEAVE TO AMEND.

## IV.    CONCLUSION

For the reasons stated above, Google's motion to dismiss is DENIED in part and GRANTED in part as follows:

8

- Google's motion to dismiss the direct infringement claim is DENIED.
- Google's motion to dismiss the contributory infringement claim is GRANTED WITH LEAVE TO AMEND.
- Google's motion to dismiss the indirect infringement claim based on pre-suit knowledge is GRANTED WITH LEAVE TO AMEND
- Google's motion to dismiss the induced infringement claim is GRANTED WITH LEAVE TO AMEND.

VirtaMove's amended complaint, if any, shall be filed by June 22, 2026, and Google's response shall be due July 13, 2026.

In addition, by June 8, 2026, the parties shall meet and confer and file a proposal regarding the filing of a consolidated complaint and response that addresses any pending claims in *VirtaMove I* and *II*.

**IT IS SO ORDERED.**

Dated: June 1, 2026

Noël Wise
United States District Judge