Marc Fenster (SBN 181067)
mfenster@raklaw.com
Reza Mirzaie (SBN 246953)
rmirzaie@raklaw.com
Neil A. Rubin (SBN 250761)
nrubin@raklaw.com
Jacob Buczko (SBN 269408)
jbuczko@raklaw.com
James A. Milkey (SBN 281283)
jmilkey@raklaw.com
James Tsuei (SBN 285530)
jtseui@raklaw.com
Christian Conkle (SBN 306374)
cconkle@raklaw.com
Qi (Peter) Tong (SBN 300347)
ptong@raklaw.com
Jonathan Ma (SBN 312773)
jma@raklaw.com
Daniel Kolko (SBN 341680)
dkolko@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-9226

*Attorneys for Plaintiff,*
*VirtaMove Corp.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| VIRTAMOVE, CORP., Plaintiff, v. GOOGLE, LLC Defendant. | Case No. 5:25-cv-00860-NW<br>Case No. 5:26-cv-00704-NW (consol.)<br><br>**CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT AGAINST GOOGLE LLC**<br><br>Jury Trial Demanded<br><br>Judge: Hon. Noël Wise<br>Location: Courtroom 3, 5th Floor |

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff VirtaMove Corp. ("Plaintiff" or "VirtaMove") makes the following allegations against Defendant Google LLC ("Defendant" or "Google"). This Consolidated Complaint is filed pursuant to the Court's Orders at Dkt. No. 175.

**INTRODUCTION AND PARTIES**

1. This complaint arises from Defendant's unlawful infringement of the following United States patents owned by VirtaMove, each of which generally relates to novel containerization systems and methods: United States Patent Nos. 7,519,814 and 7,774,762 (collectively, the "Asserted Patents"). VirtaMove owns all right, title, and interest in each of the Asserted Patents to file this case.

2. VirtaMove, Corp. is a corporation organized and existing under the laws of Canada, having its place of business at 110 Didsbury Road, M083, Ottawa, Ontario K2T 0C2. VirtaMove is formerly known as Appzero Software Corp. ("Appzero"), which was established in 2010.

3. VirtaMove is an innovator and pioneer in containerization. At a high level, a container is a portable computing environment. It can hold everything an application needs to run to move it from development to testing to production smoothly. Containerization lowers software and operational costs, using far fewer resources. It provides greater scalability (for example, compared to virtual machines). It provides a lightweight and fast infrastructure to run updates and make changes. It also encapsulates the entire code with its dependencies, libraries, and configuration files, effectively removing errors that can result from traditional configurations.

4. For years, VirtaMove has helped customers repackage, migrate, and refactor thousands of important, custom, and packaged Windows Server, Unix Sun Solaris, & Linux applications to modern, secure operating systems, without recoding. VirtaMove's mission is to move and modernize the world's server applications to make organizations more successful and secure. VirtaMove has helped companies from many industries achieve modernization success.

5. The use of containerization has been growing rapidly. For instance, one source predicted the application containers market to reach $2.1 billion in 2019 and $4.3 billion in 2022—a compound annual growth rate ("CAGR") of 30%. *See, e.g.*,

https://digiworld.news/news/56020/application-containers-market-to-reach-43-billion-by-2022. Another source reported the application containers market had a market size of $5.45 billion in 2024 and estimated it to reach $19.41 billion in 2029—a CAGR of 28.89%. *See, e.g.*, https://www.mordorintelligence.com/industry-reports/application-container-market.

6. Google LLC is a wholly-owned subsidiary of Alphabet, Inc. and a Delaware limited liability company with a principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google LLC may be served with process through its registered agent, Becky DeGeorge, at 2710 Gateway Oaks Drive, Sacramento, California 95833. Google LLC is registered to do business in the State of Texas and has been since at least November 17, 2006.

## JURISDICTION AND VENUE

7. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8. This Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within this District giving rise to this action, and has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Defendant, directly and through subsidiaries or intermediaries, has committed and continue to commit acts of infringement in this District by, among other things, importing, offering to sell, and selling products that infringe the asserted patents.

## ADDITIONAL FACTS

9. Representatives of VirtaMove met with representatives of Google in 2015, 2020, and 2021 for the purposes of partnering with Google, demonstrating VirtaMove's V-Migrate software, training Google on how to use V-Migrate software, allowing Google to run and evaluate V-Migrate software, discussing integration of V-Migrate into Google Cloud, and/or sharing materials about how V-Migrate software works. During this time frame, Google would have learned that VirtaMove entities marketed and/or advertised that V-Migrate software was patented as a matter of basic due diligence, or Google intentionally chose to remain willfully blind to this

fact. VirtaMove's technology from its demos and disclosures appears to have made their way into both the '814 Accused Products and the '762 Accused Products of Google described below.

**COUNT I**

**INFRINGEMENT OF U.S. PATENT NO. 7,519,814**

10. VirtaMove realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

11. VirtaMove owns all rights, title, and interest in U.S. Patent No. 7,519,814 ('814 patent), titled "System for Containerization of Application Sets," issued on April 14, 2009. A true and correct copy of the '814 patent is attached as Exhibit **..**

12. The technology in the '814 patent was not routine or conventional. Independent business intelligence provider Gartner reported that AppZero had no direct technological competitors in "Cool Vendors in Cloud Computing" in April 2009.




13. Additionally, the USPTO examined the patented technology and concluded that the prior art "fails to anticipate, disclose, teach, or suggest alone, or in combination, at the time of the

invention, the features as set forth of the claim . . . . Nowhere in the prior art is found collectively the *italicized* claim elements (i.e., the various aspects of applications software not being sharable between the plurality of secure (and isolated) containers of application software, and unique root file systems different from an operating system's root file system, so as to allow for different versions of the same operating running on the same system/server environment), at the ***time** of the invention*, serving to patently distinguish the prior art." Ex. 5 at 2–5 (emphasis added). Thus, multiple aspects of the claims were not found anywhere in the prior art of record, alone or in combination, such that they cannot be described as "routine" or "conventional." *Id.*

14. The technology claimed is not directed to an abstract idea. Rather, it is directed to a technological improvement in computer technology, and it provides a technological solution to a fundamentally technological problem. Indeed, the problem of application portability across operating systems is inherently rooted in computer technology with no non-technological analog, nor can the solution be performed solely within the human mind. In part, the "invention provides a solution whereby a plurality of services can conveniently be installed on one or more servers in a cost effective and secure manner." Ex. 1 at 2:13–15. This is despite how "a collection of applications . . . must be separated with each application installed on an individual computer system," and despite how "certain applications require a specific version of operating system facilities and as such will not co-exist with applications that require another version." *Id.* at 1:27–41. Moreover, the technology is distinguished from the Virtual Machine approach in that, with Virtual Machines, "an operating system, including files and a kernel, must be deployed for each application" while the technology of the '814 patent requires only one operating system regardless of the number of application containers deployed, and it "offers the ability for applications to more effectively share a common compute platform, and also allow applications to be easily moved between platforms, without the requirement for a separate and distinct operating system for each application." *Id.* at 1:51–2:3

15. On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("'814 Accused Products"), such as, e.g., Google's Migrate to Containers, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '814 patent,

for example:

> Use Migrate to Containers to modernize traditional applications away from virtual machine (VM) instances and into native containers that run on Google Kubernetes Engine (GKE), GKE Enterprise clusters, or Cloud Run platform. You can migrate workloads from VMs that run on VMware or Compute Engine, giving you the flexibility to containerize your existing workloads with ease. Migrate to Containers supports modernization of IBM WebSphere, JBoss, Apache, Tomcat, WordPress, Windows IIS applications, as well as containerisation of Linux-based applications.

https://cloud.google.com/migrate/containers/docs/getting-started.Thus, Google directly infringes by its making, using (e.g., running on Google's servers), offering for sale (e.g., offering Migrate to Containers), selling (e.g., selling Migrate to Containers), and/or importing the '814 Accused Products. Google makes, uses, offers for sale, sells, and/or imports Migrate to Containers, as described in https://www.youtube.com/watch?v=Sbv-lzlGeIo, https://cloud.google.com/migrate/containers, https://cloud.google.com/migrate/containers/docs/getting-started. Migrate to Containers is a tool to containerize existing VM-based applications to run on Google Kubernetes Engine (GKE), GKE Autopilot clusters, GKE Enterprise, or Cloud Run. https://cloud.google.com/migrate/containers/docs/anthos-migrate-benefits.

16. The infringement of the '814 patent is also attributable to Defendant. Defendant and/or users of the '814 Accused Products direct and control use of the '814 Accused Products to perform acts that result in infringement of the '814 patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

17. Defendant also knowingly and intentionally induces infringement of claims of the '814 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '814 patent and the infringing nature of the '814 Accused Products since the original Complaint in this action was filed. Despite this knowledge of the '814 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the '814 Accused Products in ways that directly infringe the '814 patent. Defendant does so, knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the '814 Accused Products, despite its knowledge of the '814 patent, thereby specifically intending

for and inducing its customers to infringe the ’814 patent through the customers’ normal and customary use of the ’814 Accused Products.

18. The ’814 Accused Products satisfy all claim limitations of claims of the ’814 patent. A claim chart comparing claims 1, 2, 4, 6, 9, 10, 13, and 14 of the ’814 patent to a representative ’814 Accused Product is attached as Exhibit **.**, which is hereby incorporated by reference in its entirety.

19. By making, using, offering for sale, selling and/or importing into the United States the ’814 Accused Products, Defendant has injured VirtaMove and is liable for infringement of the ’814 patent pursuant to 35 U.S.C. § 271.

20. As a result of Defendant’s infringement of the ’814 patent, VirtaMove is entitled to monetary damages in an amount adequate to compensate for Defendant’s infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court. VirtaMove is entitled to past damages under 35 U.S.C. § 287. VirtaMove has complied with the requirements of 35 U.S.C. § 287 and is not aware of any unmarked products that practice the claims of the ’814 patent. *See* https://web.archive.org/web/20230924012816/https://virtamove.com/about-us/product-patents. In the alternative, either VirtaMove’s product was marked before the filing of this lawsuit, or no requirement for marking applies.

**COUNT II**

**INFRINGEMENT OF U.S. PATENT NO. 7,774,762**

21. VirtaMove realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

22. VirtaMove owns all rights, title, and interest in U.S. Patent No. 7,774,762 (“’762 patent”), titled “System Including Run-Time Software to Enable a Software Application to Execute on an Incompatible Computer Platform,” issued on August 10, 2010. A true and correct copy of the ’762 patent is attached as **Exhibit ..**

23. The technology in the ’762 patent was not routine or conventional. Independent business intelligence provider Gartner reported that AppZero had no direct technological

competitors in "Cool Vendors in Cloud Computing" in April 2009. AppZero's software and services, unlike its competitors' conventional offerings, allowed its customers to deploy the technology described in the '762 patent.




24. Additionally, the USPTO examined the patented technology and concluded that the prior art did not disclose or render obvious the claims of the '762 patent. Thus, the claims were not found anywhere in the prior art of record, alone or in combination, and cannot be described as "routine" or "conventional."

25. The technology claimed is not directed to an abstract idea. Rather, it is directed to a technological improvement in computer technology, and it provides a technological solution to a fundamentally technological problem. Indeed, the problem of enabling a first software application, which is designed for execution on a first computer platform having a first operating system, to be executed on an incompatible computer platform having a second incompatible operating system, is inherently rooted in computer technology with no non-technological analog, nor can the solution be performed solely within the human mind. In part, "an object of this

invention [is] to provide a system whereby one or more software applications can be run or executed on an incompatible computer platform which heretofore, the applications could not be run on." Ex. 3 at 1:51–54. This "allows a single application that was only executable on a specific computer platform to now be used by a plurality of different computer platforms" and "[s]pecial software applications need not be written, taking weeks, months or years to create and deploy; now in accordance with this invention, by providing linkages to libraries and applications, and providing a secure capsule run time environment, software applications can be run on systems where they could not before." *Id*. at 1:54–64.

26. On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("'762 Accused Products"), such as, e.g., Google Kubernetes Engine, Cloud Run, Migrate to Containers, Google Container Registry, Google Artifact Registry, Google Cloud Platform, and all versions and variations thereof since the issuance of the '762 patent, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '762 patent, for example:

> Google Kubernetes Engine (GKE) clusters provide secured and managed Kubernetes services with autoscaling and multi-cluster support. GKE lets you deploy, manage, and scale containerized applications on Kubernetes, powered by Google Cloud.

https://cloud.google.com/migrate/containers/docs/getting-started

> Use Migrate to Containers to modernize traditional applications away from virtual machine (VM) instances and into native containers that run on Google Kubernetes Engine (GKE), Anthos clusters, or Cloud Run platform. You can migrate workloads from VMs that run on VMware or Compute Engine, giving you the flexibility to containerize your existing workloads with ease.

https://cloud.google.com/migrate/containers/docs/getting-started

27. The infringement of the '762 patent is also attributable to Defendant. Defendant and/or users of the '762 Accused Products direct and control use of the '762 Accused Products to perform acts that result in infringement of the '762 patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

28. Defendant also knowingly and intentionally induces infringement of claims of the '762 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '762 patent and the infringing nature of the '762 Accused Products since the original Complaint in this action was filed. Despite this knowledge of the '762 patent, Defendant continues to actively encourage

and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the ’762 Accused Products in ways that directly infringe the ’762 patent. Defendant does so, knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the ’762 Accused Products, despite its knowledge of the ’762 patent, thereby specifically intending for and inducing its customers to infringe the ’762 patent through the customers’ normal and customary use of the ’762 Accused Products.

29. The ’762 Accused Products satisfy all claim limitations of claims of the ’762 patent. A claim chart comparing an independent claim of the ’762 patent to a representative ’762 Accused Product is attached as **Exhibit .**, which is hereby incorporated by reference in its entirety.

30. By making, using, offering for sale, selling and/or importing into the United States the ’762 Accused Products, Defendant has injured VirtaMove and is liable for infringement of the ’762 patent pursuant to 35 U.S.C. § 271.

31. As a result of Defendant’s infringement of the ’762 patent, VirtaMove is entitled to monetary damages in an amount adequate to compensate for Defendant’s infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court. VirtaMove is entitled to past damages under 35 U.S.C. § 287. VirtaMove is in compliance with the requirements of 35 U.S.C. § 287 because it is asserting only method claims of the ’762 patent in this case.

## PRAYER FOR RELIEF

WHEREFORE, VirtaMove respectfully requests that this Court enter:

a. A judgment in favor of VirtaMove that Defendant has infringed, either literally and/or under the doctrine of equivalents, each of the Asserted Patents;

b. A permanent injunction prohibiting Defendant from further acts of infringement of each of the ’814 and ’762 patents;

c. A judgment and order requiring Defendant to pay VirtaMove its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant’s infringement of each of the Asserted Patents;

d. A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to VirtaMove, including without limitation, pre-judgment and post-judgment interest;

e. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to VirtaMove its reasonable attorneys' fees against Defendant; and

f. Any and all other relief as the Court may deem appropriate and just under the circumstances.

**DEMAND FOR JURY TRIAL**

VirtaMove, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: July 27, 2026

*/s/ Christian W. Conkle*
Marc Fenster (SBN 181067)
Email: mfenster@raklaw.com
Reza Mirzaie (SBN 246953)
rmirzaie@raklaw.com
Neil A. Rubin (SBN 250761)
nrubin@raklaw.com
Jacob R. Buczko (SBN 269408)
jbuczko@raklaw.com
James A. Milkey (SBN 281283)
jmilkey@raklaw.com
James Tseui (SBN 285530)
jtseui@raklaw.com
Christian W. Conkle (SBN 306374)
cconkle@raklaw.com
Qi (Peter) Tong (SBN 300347)
ptong@raklaw.com
Jonathan Ma (SBN 312773)
jma@raklaw.com
Daniel Kolko (SBN 341680)
dkolko@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-9226

*Attorneys for Plaintiff, VirtaMove Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 27, 2026, counsel of record who have appeared in this case are being served with a copy of the foregoing via CM/ECF.

/s/ Christian W. Conkle